UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>V.<br><br>WILLIAM SEAN FAISON,<br>    Defendant. | CRIMINAL NO. 5:09-135-KKC<br><br><br>MEMORANDUM OPINION AND ORDER |

\*\*\* \*\*\* \*\*\*

This case is before the Court on remand from the United States Court of Appeals for the Sixth Circuit. The Sixth Circuit directed this Court to conduct an evidentiary hearing to cure certain factual infirmities in the record and to reassess whether Faison's counsel provided him with ineffective assistance of counsel. The Court held a hearing on October 4, 2016 during which Cullen Gault, Faison's CJA appointed attorney, and Ron Walker, the Assistant U.S. Attorney prosecuting the case, both testified.

As set forth below, this Court's conclusion remains the same: Faison's ineffective assistance of counsel claim fails. The Court finds that the entirety of the record conclusively shows that Faison is not entitled to relief under 28 U.S.C. § 2255.

## I. Background

The record in this case is well documented. (DE 786; DE 814). Therefore, the Court will recite only the facts related to the issues in the present matter.

On November 24, 2009, Cullen Gault was appointed to defend Faison on charges of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), and conspiracy to possess with intent to distribute a controlled substance, in violation of § 841(a)(1). *See* 21 U.S.C. § 846.

On December 15, 2009, Gault sent Faison a letter along with a proposed Plea Agreement. In the letter, Gault noted that he "had an ethical obligation to forward [Faison] the . . . documents." (DE 860, Def. Ex. 2). He also sent Faison an email on the same day reiterating the contents of the letter. (DE 860, Def. Ex. 2). Two days later, on December 17, 2009, Gault sent Faison another email, confirming that he would meet with Faison in Cincinnati, Ohio on December 22, 2009. (DE 860, Def. Ex. 2). In preparation for the meeting, Gault reached out to Assistant U.S. Attorney Walker inquiring as to whether Walker could provide him with the names of potential witnesses who might testify against Faison in the event of a trial. In response, Walker pointed Gault to a few names and noted that "[t]his was the best I can do until pleas are reached with [Faison's co-defendants]." (DE 860, Def. Ex. 2).

Faison and Gault met in Cincinnati to discuss the case. (DE 860, Ex. 1 at 3). There were no documented discussions between Gault and Faison until a few weeks later, when Gault sent Faison a series of emails between January 6 and January 13 discussing, among other topics, the Federal Sentencing Guidelines and discovery materials. (DE 860, Ex.1 at 2). Nothing in the email exchange mentioned the offer of a plea deal by the government.

On January 14, 2010, Gault made a series of phone calls. He called the Court's chambers to confirm the deadline of January 18, 2010 by which to file a motion for a change of plea.  Also, Faison and Gault spoke by telephone regarding the status of the case. As indicated by Gault's follow-up email, Faison at that point "still desire[d] to go to trial." (DE 860, Def. Ex. 2). In that same email, Gault further outlined an anticipated sentencing guideline range based upon Faison's criminal history. He stated: "It is my opinion this places you in a Criminal History Category IV. If you then review the Federal Sentencing Guidelines, the recommendation to the Court would be 121-151 months. I used a base level of 29." (DE 860, Def. Ex. 2). The email also referenced a conversation Gault and Walker had the same day. (DE 860, Ex. 1 at 4). The CJA records indicate that Gault spoke to Walker about the nature of the case and that Walker was willing to participate in a conference call with Faison regarding the same. As  Gault's email to Faison noted: " Walker, the prosecutor, wanted me to inform you that the base level could increase because it is his opinion the Jury will find a greater quantity of drugs were sold that was contained in your proposed Plea Agreement. If that comes to fruition, your base level would be higher and the sentence recommendation to the Court could be higher." (DE 860, Def. Ex. 2).

Later that day, Gault, Walker, and Faison all spoke by telephone conference. The subject of that conversation was to inform Faison of, in Walker's words, "the fact that there was a real probability that there was going to be a superseding indictment and that that would not be in [Faison's] best interest to let that happen because it could increase his guidelines and other enhancements could be imposed upon him if

he did not accept the plea agreement that was presented to him at that time." (DE 862, p. 86, ¶ ¶ 10 –17). Further, during the call, Walker explained to Faison that if there was no guilty plea entered, "[the United States] would be filing a superseding indictment." (DE 862, p. 89 ¶ 24).

Four days later, on January 18, 2010, Gault again emailed Faison, this time to confirm that the two had discussed Faison's options and that Faison had authorized Gault to file a motion requesting a change of plea. In the same message, Gault relayed to Faison the government's position that if the case went to trial, "[the U.S.] could prove additional amounts of narcotics were sold above what was detailed in the Plea Agreement." (DE 860, Def. Ex. 2). Gault noted that the additional amounts, if proven, would "recommend a higher sentence that (sic) what I projected in an e-mail dated 1/14/10. Please remember that Sentencing Guidelines are recommendations for the Judge." (DE 860, Def. Ex. 2). Gault informed Faison that he spoke to the U.S. Attorney about Faison's intentions to cooperate and that doing so would "hopefully lead to . . . a 5K1.1 Motion for a downward departure." (DE 860, Def. Ex. 2).

Faison then changed his mind and decided not to cooperate. On January 21, 2010, Gault confirmed Faison's declination in an email and further informed him that "[he] would forgo the option of the US filing a 5K1.1 Motion to request the Judge reduce your sentence based on your cooperation." (DE 860, Def. Ex. 2). Later the same day, Gault informed Faison that a hearing for change of plea had been scheduled for January 25, 2010. (DE 860, Def. Ex. 2).

4

About thirty minutes before the January 25 hearing, Gault received an email from Walker confirming the previous telephone conversation he had with Gault and Faison eleven days earlier on January 14, 2010. In the email, Walker also informed Gault of the government's position that the plea agreement needed to be adjusted. Walker wrote:

> During our telephone conversation with Faison, I referred to base offense level as a level 34 based upon 6000 OC 80 mg pills in looking at the plea agreement it has a level 32 and 4000 pills. The plea agreement also does not have a leadership calculation. Those are errors in the plea agreement. . . . My position at sentencing will be that they do apply if we are unable to make these changes.

(DE 860, Def. Ex. 2).

Faison and Gault then appeared before the Court for rearraignment. At the beginning of the proceedings, however, Gault informed the Court that Faison had contacted another attorney, Mr. Halpern, about representing him in the case. (DE 351, p. 4 ¶ 20–22). Gault requested a continuance, which the Court granted. The Court then advised Faison that in view of his change of counsel, the proceedings would be continued because it did not "want [him] to do anything [he was] not prepared to do here today." (DE 351, p. 5, ¶¶ 19–20). Faison responded, "All right." (DE 351, p. 5 ¶ 21). No signed plea agreement was produced or mentioned to the Court by Faison, Gault, or the government. After the hearing, Walker informed Gault that the plea agreement as written was off the table.

Three days later, on January 28, 2010, Walker sent Gault a letter reiterating that "the plea agreement terms have been rejected" and that "there will be a new plea agreement." (DE 860, Def. Ex. 2). Walker went on to note that the new terms would

include a two point increase in the base offense level to 34 and that there would be an additional four level enhancement for Faison's leadership role in the alleged conspiracy. (DE 860, Def. Ex. 2).

On February 3, 2010, Gault informed Faison by letter that the plea offer and previously submitted agreement was "null and void" and that Walker would be seeking a superseding indictment in the case. (DE 860, Def. Ex. 2).

The next day, February 4, 2010, a grand jury issued the superseding indictment. (DE 313). Hours later, Gault emailed Faison the superseding indictment, the order in the superseding indictment, and a motion for rearraignment. Gault also forward copies of the documents to Halpern.

On May 24, 2010, with Halpern as counsel, Faison pleaded guilty to both counts in the superseding indictment *without a written plea agreement*. (DE 468, p. 8 ¶ 17; DE 603, p. 4 ¶ 16). The Court sentenced Faison to a term of imprisonment of 132 months, a downward variance from the sentencing guidelines. (DE 603, p. 23 ¶¶ 6–9).

On April 25, 2014, this Court entered a Memorandum Opinion and Order denying Faison's motion to vacate his sentence pursuant to 28 U.S.C. § 2255. (DE 786). Faison contended that he was provided ineffective assistance of counsel in violation of the Sixth Amendment when his two trial attorneys, Gault and Halpern, allowed a plea agreement offer to lapse when neither informed the Court or the government that Faison has accepted the plea agreement. (DE 786). This Court declined to hold an evidentiary hearing and found that Faison failed to prove that

either attorney's performance fell below an objectively reasonable level. Also, this Court determined that Faison did not suffer harm because he was ultimately sentenced within the lower guideline range contemplated by the original plea agreement.

This matter is now before the Court on remand.

## II. Discussion [1]

A. <u>Factual Findings</u>

"Where there is a factual dispute, the *habeas* court must hold an evidentiary hearing to determine the truth of petitioner's claims." *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999). However, "the court is not required to hold an evidentiary hearing if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008). The § 2255 petitioner's burden "for establishing an entitlement to an evidentiary hearing is relatively light." *Turner*, 183 F.3d at 477.

The Sixth Circuit remanded this case with instructions to hold a hearing to make certain factual determinations related to Faison's ineffective assistance of counsel claims. As framed by the Sixth Circuit, whether Faison is entitled to relief rises and falls with the Court's determination of the following inquiries:

> (1) Faison and the government disagree about whether there was a deadline associated with accepting the plea agreement that Gault and Halpern allegedly let lapse. The record contains facts

---

[1] Faison previously contended that Halpern was ineffective for allowing the guilty plea agreement offer to lapse. But Faison did not offer any evidence at the hearing to pursue this claim.

    supporting both arguments, which necessitates an evidentiary hearing. *Faison v. United States*, 650 F. App'x 881, 886 (6th Cir. 2016)

(2) Faison and the government also dispute whether Gault was ineffective for failing to inform the government and the court that Faison wished to plead guilty at the rearraignment hearing. . . . Ultimately, it is unclear from the record whether Faison still wanted to plead guilty at the rearraignment hearing, despite the change in counsel. Faison asserts that he did, which is why he returned the signed plea agreement to Gault. It may be that, as Faison asserts, Gault wrongfully let a favorable plea agreement offer lapse; however, it may also be that, as the government asserts, Gault was simply attempting to abide by Faison's wishes that Halpern represent him. The answer turns on whether Gault knew there was a deadline for accepting the plea agreement, which the record does not reveal. *Faison*, 650 F. App'x at 886.

As to the first directive, the record clearly establishes that there was an implicit deadline associated with the plea deal and that deadline was the date of Faison's rearraignment, January 25, 2010. The sole purpose of that hearing was for Faison to change his plea. In essence, Faison set his own deadline when he authorized Gault to file a motion for rearraignment after he learned that he would most likely face a stiffer sentence if he did not plead guilty. While it is true that there is nothing in the written record to indicate that Gault informed Faison of a deadline at the time he emailed Faison the agreement on December 15, 2009, *Faison*, 650 F. App'x at 887, Faison surely knew before he decided to retain new counsel and not plead on the day of rearraignment that the government could withdraw its offer of a favorable deal.

Walker testified that during a January 14, 2010 telephone conference with Gault and Faison, he told both men "that if [Faison] did not accept the plea **on that date on – if he did not enter a guilty plea on that date** that there would be a superseding indictment that would add money laundering charges to him and likely

would increase his guideline range as well as the drug quantity." (DE 862, p. 92 ¶¶ 8–13) (emphasis added). [2] Walker continued, testifying that "the reason we were here [on January 25th] was because all the parties expected Mr. Faison to accept the plea agreement that had been offered, and came into court and basically said, 'I am not going to plead guilty.'" (DE 862, p. 91 ¶¶ 5–10). And when asked again whether he told Faison specifically of the government's plan to issue a superseding indictment in the event Faison did not plead guilty pursuant to the plea agreement, Walker was unequivocal in his answer, stating "Yes" that he told Faison directly because "I wanted him to be aware that it was not in his best interest to go forward."(DE 862, p. 92, ¶¶ 15–17). Faison neither disputed Walker's testimony nor objected to his characterization of the conversation.

This January 14, 2010 conversation involving Walker, Gault and Faison fills the gap in the record between the time Faison received the originally proposed plea agreement and its later revocation by the government. Before the telephone conference, Gault emailed Faison confirming their conversation earlier that same day. The first line of the email notes that as of 11:24 a.m. on January 14, 2010, Faison "still desire[d] to go to trial." (DE 860, Def. Ex. 2). Four days later, Gault and Faison spoke again. Faison had changed his mind and authorized Gault to file a motion for rearraignment, otherwise known as a change of plea. (DE 860, Def. Ex. 2). Three days

---

[2] Walker also testified that he told Faison that if he did not accept the plea "and enter a guilty plea on January 25th . . . that we would be filing a superseding indictment." (DE 862, p. 89 ¶¶ 19–24; DE 847, p. 1). To be fair to Faison, the record indicates that there was not a set day for the rearraignment at the time of the phone conversation. Gault informed Faison on January 21, 2010 that his rearraignment was set for January 25, 2010. (DE 860, Def. Ex. 2).

9

later, Gault informed Faison that the Court had scheduled the rearraignment for January 25, 2010.

Directly to the issue of whether Faison knew of any deadline within which he must plead to get the benefit of the best bargain, the evidence is that Walker told Faison that he would revoke the offer if he did not plea on the date set by the Court. Gault then informed Faison that the date was January 25, 2010. Faison's actions before and after the telephone conference establish his knowledge and understanding that if he failed to enter a plea on January 25, he could face harsher charges and stiffer penalties.

The Sixth Circuit's second directive is largely answered above. Gault knew Faison was expected to enter a plea of guilty at the January 25 rearraignment hearing. Gault facilitated the telephone conversation with Walker, Faison and himself. Then Gault contacted the Court and obtained a date for rearraignment, a proceeding scheduled at Faison's request for the sole purpose of entering a guilty plea.

Attempting to determine whether Gault fumbled Faison's opportunity to plead guilty, however, exposes a larger factual question in the record: whether or not Faison actually signed and sent Gault the proposed plea agreement.  Faison claims that he faxed a signed plea agreement to Gault and that he attended the January 25 rearraignment hearing fully prepared to proceed with a guilty plea.  Faison maintains that position despite having remained silent when the Court addressed him at the hearing regarding his intentions.  Moreover, Faison said nothing to Gault or to the

Court when the lawyers represented that the defendant had obtained new or additional counsel and would not be entering a plea as planned.

Gault testified credibly that he never received a signed plea agreement from Faison. Gault stated that it was his practice *not* to have clients sign a plea agreement until the day set for pleading so that it could be signed in open court. When asked if it was his practice to require that his clients execute a signed plea deal prior to filing a motion for rearraignment, Gault answered "no." (DE 862, p. 46–47). Gault further testified that he never received any kind of signed plea agreement from Faison. In Gault's words: "To the best of my recollection, no, I have never received a signed plea agreement from Mr. Faison. . . . I have reviewed the file again [before the hearing] and did not see a signed plea agreement." (DE 862, p. 44 ¶¶ 4–5, 9–10). When asked again, Gault stated "I do not have an executed plea agreement signed by Mr. Faison in my file. I do not recall receiving a signed plea agreement from Mr. Faison." (DE 862, p. 47 ¶¶ 19–22). Moreover, no CJA billing entries or emails reflect that Gault ever received the signed plea agreement. (DE 860, Ex. 1).

The Court asked Faison to explain the whereabouts of the actual signed document and why he had failed to bring it to court. Faison simply remained silent. He made no effort to explain why he did not keep the document or bring it to anyone's attention at the hearing. Moreover, Faison did not retain a receipt for the facsimile he allegedly sent to Gault. Finally, Faison offered no explanation of why he never provided a copy of the signed agreement to Halpern.

11

B. <u>Analysis</u>

With the benefit of these factual findings, the Court turns to the merits of Faison's ineffective assistance of counsel claim.

The right to effective counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). To state a claim of ineffective assistance of counsel Faison must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). After an evidentiary hearing, the Court finds that Faison has failed to show Gault's performance fell below an objectively reasonable level in his representation of Faison.

The thrust of Faison's argument appears to be that Gault's communications were somehow insufficient to seal the good deal before it was withdrawn by the government. The question under *Strickland* is not whether a lawyer's performance is perfect, but whether "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Courts must look at whether the actions committed by counsel are "errors so serious that counsel [is] not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Moreover, the Supreme Court has admonished lower courts that the performance inquiry "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id.* at 689; *Premo v. Moore*, 131 S.Ct. 733, 739 (2011).

Under this standard, simply put, Gault did all that was constitutionally required of him. None of Gault's actions, as they relate to the originally proposed plea agreement, were objectively unreasonable. Gault facilitated a conversation between the government and Faison, during which the government warned Faison that failure to accept the deal would result not only in revocation of the offer, but also the potential for more charges and greater penalties. During the telephone conference, Walker did not lay down the exact deadline by which Faison would be expected to plead because a hearing date had not yet been secured from the Court. Nevertheless, Walker made it clear that if Faison did not plead guilty "on that date"— i.e., on the date that Faison appeared in court—that the government would issue a superseding indictment. Indeed, Faison answered the question of when he was expected to plead when, four days after the phone conversation with Walker, he authorized Gault to request a rearraignment date from the Court, a fact that is confirmed in an email from Gault to Faison. (DE 860, Def. Ex. 2). Thus, there is little doubt that by the morning of January 25, 2010, Faison knew that he was expected to plead guilty, and Gault did everything necessary to provide his client with the opportunity to do so.

Faison claims that Gault was ineffective for failing to inform the government and the Court that he really wanted to plead guilty at the hearing rearraignment instead of moving forward with different counsel. This is simply illogical. Gault had no reason to think Faison wanted to proceed with a guilty plea when his client retained new counsel.

13

There is no credible evidence that Faison ever faxed Gault a copy of a missing signed plea agreement. Moreover, Gault testified that he never received a signed plea agreement by fax or in any form. Gault testified that on the day of the scheduled plea proceeding, he received a call from Halpern who informed him that Faison had "contacted [Halpern] . . . about representing [Faison] in th[e] case." (DE 351, p. 4 ¶¶ 19–22). Moreover, Gault testified credibly that Faison never told him that he had signed a plea agreement or did anything to suggest he wanted to move forward with a plea on January 25, 2010. By the time for rearraignment arrived, Faison had already sought out a new lawyer; Gault withdrew "for [Faison] to retain Mr. Halpern . . . to get in [the] case . . . ." (DE 351, p. 5 ¶ 7). Faison elected not to speak after Gault said "if the Court wants some further explanation, Faison can explain some reasons or whatever." (DE 351, p. 5 ¶¶ 10–12). The Court then advised Faison that he may choose to have other counsel, but that it did not "want [him] to do anything [he was] not prepared to do here today." (DE 351, p. 5 ¶¶ 19–20). Faison responded, "All right." (DE 351, p. 5 ¶ 21). If Faison intended to plead guilty, he could have and should have said something to someone.

The Supreme Court has stressed that reviewing courts must resist "the distorting effects of hindsight" by "evaluat[ing] the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. From Gault's perspective on the day of rearraignment, it appeared Faison had changed his mind and decided not to plead guilty. Without a signed plea agreement and having learned that Faison sought new counsel, Gault reasonably asked for a continuance to allow Halpern to appear. To do

14

anything else would have been unwise. Given the circumstances, Gault did all he could do and his performance was not constitutionally deficient.

### III. Conclusion

"The decision to plead guilty—first, last, and always—rests with the defendant, not his lawyer. . . . [T]he ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction." *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003). In deciding not to plead guilty the day of rearraignment and choosing to retain Halpern, Faison made his decision—he rejected the plea agreement. Faison knew the day of rearraignment that all parties involved expected him to take the plea deal. Gault and Walker made it clear to him that a superseding indictment would be issued if he did not plead guilty on the day of rearraignment, even if an exact expiration date was not expressly provided to Faison. "Plea agreements are contractual in nature," thus the parties are free to set the terms for acceptance and rejection. *United States v. Harris*, 473 F.3d 222, 225 (6th Cir. 2006). When Faison did not plead guilty, the government did what it said it would do—it withdrew the plea agreement. Gault did not render ineffective assistance by allowing Faison to pursue the case the way Faison wanted.

Having found that Gault's performance was not constitutionally deficient, the Court need not address the prejudice prong of the *Strickland* test.[3]

---

[3] The Sixth Circuit found that Faison had demonstrated that the outcome of the sentencing would likely have been different if he had accepted the plea agreement. *Faison v. United States*, __ Fed. Appx. __, 2016 WL 3057786, at *5-*6 (6th Cir. May 31, 2016), and concluded that "[a]ny disparity between the Guidelines range applied and the lapsed plea agreement Guidelines range may give rise to prejudice." *Id.* at *5 (citing *Molina-Martinez v. United States*, __ U.S. __, 136 S.Ct. 1338, 1345 (2016) (concluding that the harmless error standard does not require a "further showing of prejudice beyond the fact that the erroneous, and higher, Guidelines range set the wrong framework for the sentencing proceedings" and that "[t]his is so even if the ultimate sentence falls within both

15

For the foregoing reasons, the Court conclusively finds that "the prisoner is entitled to no relief." 28 U.S.C. § 2255. Accordingly, the Court **ORDERS** that Faison's Motion to Vacate his sentence (DE 727) and Motion for Reconsideration (DE 823) are **DENIED**.

*****

Faison remains confined at the Grayson County Detention Center. Faison moves the Court (DE 864) to order that he be returned to the custody of the Federal Bureau of Prisons with the recommendation to return to FCI McKean in Bradford, Pennsylvania, the institution at which he had been serving his sentence, so that he can ensure his eligibility for halfway house placement later this year. Faison also informs the Court that the United States has no objection to this request.

Accordingly, because Faison's presence in this District is no longer required for the reasons stated above, **IT IS FURTHER ORDERED** that Faison's motion for return to federal prison (DE 864) is **GRANTED**. The Court **RECOMMENDS** that Faison be returned to the institution at which he was previously serving his sentence.

Dated February 16, 2017.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

---

the correct and incorrect range")). Because Faison cannot establish the first prong of *Strickland*, the Court does not reach the second prong.